UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

MONICA S. WHARTON,

                              Plaintiff,

                                                    **DECISION AND ORDER**
                                                    07-CV-116A

              v.


STATE UNIVERSITY OF NEW YORK
   AT BUFFALO,

                              Defendant.

═══════════════════════════════════

## I.      INTRODUCTION

        Plaintiff commenced this employment discrimination case against

defendant the State University of New York at Buffalo ("UB") when she filed her

original complaint on February 28, 2007.  Plaintiff subsequently amended her

complaint twice, with the second amended complaint being filed on December 11,

2007.  In a status conference on April 23, 2010, the Court scheduled jury

selection for November 16, 2010 and the commencement of trial proof for

November 17, 2010.  When plaintiff arrived for a final pretrial conference on

November 15, 2010, the Court realized that the trial could not go forward at that

time because plaintiff had not exchanged proposed trial exhibits with UB, had not

submitted two copies of proposed trial exhibits to the Court, and had not filed any

documents required by the Court's final pretrial order (Dkt. No. 89).  A few days

later, plaintiff completed her pretrial submissions and submitted her proposed

witnesses and exhibits to UB and the Court.  The Court decided that a schedule

for the submission of written objections and responses would be the best way to

review numerous objections that UB would bring regarding the six witnesses that

plaintiff proposed and the 240 exhibits that she submitted.

Accordingly, the Court rescheduled jury selection for January 5, 2011.[1]

The Court directed the parties to file any objections to each other's witness and

exhibit list by December 3, 2010.  The Court directed the parties to respond to

each other's objections by December 10, 2010.  Upon review of the parties'

objections and responses, the Court rules on the objections as explained below.

II.    DISCUSSION

A.    *Elements of Plaintiff's Claims*

Most of the objections that the parties have filed came from UB, concerning

plaintiff's witnesses and exhibits.  Most of UB's objections, in turn, are objections

to the relevance or to the hearsay nature of the evidence that plaintiff proposes to

submit to the jury at trial.  To resolve UB's objections and to put them in proper

context, the Court will review the elements of each of plaintiff's claims.  Plaintiff's

Title VII and Title IX claims will be assessed together under the Title VII

framework.  *Cf. Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir.

---

[1] On December 28, 2010, plaintiff filed a motion to adjourn the trial (Dkt. No. 107).  On January 5, 2011, the Court granted plaintiff's request to adjourn the trial and rescheduled jury selection for Tuesday, June 14, 2011.  (*See* Dkt. No. 109.)

1995) ("[I]n a Title IX suit for gender discrimination based on sexual harassment of a student, an educational institution may be held liable under standards similar to those applied in cases under Title VII.").

1.   <em>Unlawful Termination Under Title VII and Title IX</em>

Plaintiff has alleged that UB criticized her, excluded her from departmental meetings, denied her training opportunities, and ultimately terminated her because she "had too much power as a woman on the staff" (Dkt. No. 42 at 7) and because of her gender generally.  "In proving a case under Title VII, following the defendant's proffer of a justification, a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus.  A plaintiff has no obligation to prove that the employer's innocent explanation is dishonest, in the sense of intentionally furnishing a justification known to be false.  The crucial element of a claim under Title VII is discrimination, not dishonesty."  <em>Henry v. Wyeth Pharms., Inc.</em>, 616 F.3d 134, 156 (2d Cir. 2010) (citations omitted).

Accordingly, to prove her claim at trial, plaintiff must prove two elements by a preponderance of the evidence.  First, plaintiff must prove that UB fired or failed to retain her.  Second, plaintiff must prove that her gender was a motivating factor in UB's decision.  <em>See</em> 5-88 Hon. Leonard B. Sand et al., <em>Modern Federal Jury Instructions (Civil)</em> ("Sand"), Instruction 88-42 (2010).

3

2. *Hostile Work Environment Under Title VII and Title IX*

Plaintiff has alleged that UB created a hostile work environment by bullying and demeaning her on multiple occasions, including in front of co-workers. "Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' As we made clear in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), this language is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (ellipsis in original) (internal quotation marks and citations omitted).

Accordingly, to prove her claim at trial, plaintiff must prove four elements by a preponderance of the evidence. First, plaintiff must prove that she was subjected to unwelcome harassment, ridicule, or other abusive conduct. Second, plaintiff must prove that the abusive conduct was motivated, at least in part, by

her gender.  Third, plaintiff must prove that the abusive conduct was so severe or pervasive that both plaintiff herself and a reasonable person in plaintiff's position would find her work environment so hostile or offensive that it would interfere with her work performance.  Fourth, plaintiff must prove that UB's management employees knew, or should have known, of the abusive conduct.  *See Sand*, Instruction 88-45.

### 3.    *Retaliation Under Title VII and Title IX*

Plaintiff has alleged that UB retaliated against her complaints of a hostile work environment by continuing to subject her to abusive and demeaning comments.  "As we have explained, [t]o establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008) (alteration in original) (internal quotation marks and citation omitted).

Accordingly, to prove her claim at trial, plaintiff must prove four elements by a preponderance of the evidence.  First, plaintiff must prove that she complained of discrimination in her employment in some specific way.  Second, plaintiff must prove that UB was aware of plaintiff's complaint.  Third, plaintiff must prove that she was then subjected to a material adverse action by UB.  With respect to the third element, an adverse action is 'material,' in terms of a retaliation claim, if it

might have discouraged a reasonable worker from complaining about similar discrimination. The adverse action itself, however, need not be related to plaintiff's employment.  Fourth, plaintiff must prove that UB took the adverse action, at least in part, because of plaintiff's complaint.  *See Sand*, Instruction 88-46.

4.      *Discrimination Against an Advocate Under Title II of the ADA and Under the Rehabilitation Act*

Finally, plaintiff has alleged that UB harassed her, retaliated against her, and ultimately fired her because it resented her public advocacy for disabled students, advocacy that included public criticism of UB over accommodations for disabled students.  "Looking to the enforcement provisions of each statute . . . [plaintiff] has standing under both Title II of the ADA and the Rehabilitation Act. Title II's enforcement provision extends relief to '*any person* alleging discrimination on the basis of disability.'  42 U.S.C. § 12133 (1994).  Similarly, the Rehabilitation Act extends its remedies to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability.  29 U.S.C. § 794a(a)(2).  As the district court noted, the use of such broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution."  *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) (internal quotation marks and

6

citation omitted), *superseded in part on other grounds by* Fed. R. Civ. P. 52;

*accord Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 827 (9th Cir.

2009) ("As in our analysis of section 504 of the Rehabilitation Act, the language

employed in the anti-retaliation provisions of Title II does not evince a

congressional intent to limit standing to individuals with disabilities.  Instead, the

use of the phrase 'any individual' and the absence of any language limiting

standing to those with disabilities indicates Congress's intent to grant standing

under Title II 'as broadly as is permitted by Article III of the Constitution.'  As we

recognized in our Rehabilitation Act analysis, it appears that in formulating the

language in Title II's anti-retaliation provisions, Congress recognized that

disabled individuals may require assistance from others to defend their rights.")

(citing *Innovative Health*).

Accordingly, to prove her claim at trial, plaintiff must prove three elements

by a preponderance of the evidence.  First, plaintiff must prove that she either

has opposed any act or practice made unlawful by these statutes, or has aided or

encouraged any other individual in the exercise or enjoyment of any right granted

or protected by the statutes.  For purposes of this element, it is irrelevant that

plaintiff herself does not have a disability as that term is defined in the statutes.

Second, plaintiff must prove that UB discriminated against her because of her

advocacy.  Third, plaintiff must prove that she suffered damages as a direct result

of that discrimination.  *See Sand*, Instruction 88A-3.

**B.**    *Relevance and Hearsay Generally*

In the Federal Rules of Evidence, the general rules for relevance and

hearsay are sufficiently straightforward that the Court will cite them for the sake of

plaintiff, who is proceeding *pro se*.  "'Relevant evidence' means evidence having

any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be

without the evidence."  Fed. R. Evid. 401; *see also Gillming v. Simmons Indus.*,

91 F.3d 1168, 1173 (8th Cir. 1996) ("Although blanket evidentiary exclusions

based on relevance grounds are not favored in discrimination cases, to be

admissible the evidence must assist in developing a reasonable inference of

discrimination.")

As for hearsay, "'[h]earsay' is a statement, other than one made by the

declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted."  Fed. R. Evid. 801(c).  "Hearsay is not admissible

except as provided by these rules or by other rules prescribed by the Supreme

Court pursuant to statutory authority or by Act of Congress."  Fed. R. Evid. 802.

One exception to the hearsay rule that bears heavily on plaintiff's proposed

exhibits is the "business record" exception in Rule 803(6).  As explained below,

this exception covers the medical records that plaintiff has submitted—so long as

they are certified by the custodians of the records as originals or authentic

copies—but will not cover most of the numerous e-mail messages that plaintiff

has submitted. "An e-mail created within a business entity does not, for that

reason alone, satisfy the business records exception of the hearsay rule."

*Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008)

(citations omitted); *see also id.* at 621 ("None of the e-mails was sworn. In

consequence, statements by plaintiff are admissible only to prove the fact that

they were made. The same is true concerning statements by [the defendant

employer's] personnel except to the extent that plaintiff relies upon them against

the defendants. In that event, the statements are not hearsay by declarants.").

### C. *Plaintiff's Witnesses*

Plaintiff has proposed having six witnesses testify at trial, including herself.

UB has filed objections about each of these witnesses. The Court will address

each witness in turn.

#### 1. *Monica S. Wharton*

Plaintiff proposes testifying in detail about her 17 years of employment as

an administrative staffer at UB's Great Lakes Program, dating back to June 6,

1989. As she has explained in her pretrial statement, plaintiff seeks to testify that

her employment history was positive for all 17 years. Plaintiff seeks to testify that

her administrative responsibilities increased throughout the years when she

worked for UB, especially through the year 2000, when she worked under Dr.

Joseph V. DePinto, the Director of the Great Lakes Program from 1991–2000.

Plaintiff seeks to testify that, although she always was a term employee at UB,

her funding was renewed annually for the first 12 years of her employment history.  After that, plaintiff received a three-year funding term beginning in March 2002.  That three-year term was followed by a one-year reappointment that lasted through March 22, 2006.  Plaintiff received her funding renewals with help from Dr. Joseph F. Atkinson ("Atkinson"), who has been the Director of the Great Lakes Program since 2000.

As for discriminatory conduct, plaintiff seeks to testify that the discrimination against her began in 2005 at the hands of Dr. Alan Rabideau ("Rabideau"), a UB professor who worked at the Great Lakes Program.  Plaintiff seeks to testify about numerous instances when Rabideau harrassed her and when UB administrators such as Atkinson ignored her complaints or retaliated against her for complaining.  Plaintiff asserts that the period of discrimination has lasted beyond her formal termination on April 26, 2007 through the present time. Plaintiff's theory supporting discrimination through the present time, approximately four years after her formal termination, appears to be that UB did not give her a chance to interview for other administrative jobs on campus and interfered with her attempts to find outside employment by having state employment records list her as fired, when in fact her job was defunded.  In support of this theory, plaintiff cites *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) and its principle that "[a]s long as the employer has engaged in enough activity to make out an actionable hostile environment claim,

an unlawful employment practice has 'occurred,' even if it is still occurring.
Subsequent events, however, may still be part of the one hostile work
environment claim and a charge may be filed at a later date and still encompass
the whole."

UB objects to having plaintiff testify at all on the grounds that she did not
include her name on the list of witnesses required by the Court's pretrial order.
Additionally, UB objects to plaintiff's proposed testimony because it is too general
in nature to formulate more specific objections.

The Court will not preclude plaintiff's testimony altogether but agrees with
UB that the scope of plaintiff's testimony should be limited.  As part of her theory
that her responsibilities were curtailed suddenly for discriminatory reasons,
plaintiff may testify in summary fashion about any performance reviews, funding
renewals, or awards that she received at any time in her work history with UB.  If
UB does not dispute that plaintiff received positive feedback throughout her
employment history then the parties are encouraged to reach a stipulation to that
effect.  Subject to more specific objections about relevance, plaintiff generally
may testify about any *actions* that Rabideau, Atkinson, or other UB employees
took when interacting with her that relate to her allegations.  Subject to more
specific hearsay objections at trial, plaintiff may testify about relevant *statements*
that Rabideau, Atkinson, or other UB employees made to her within the scope of
their respective employment.  *See* Fed. R. Evid. 801(d)(2)(D) ("A statement is not

11

hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."). Statements from non-parties likely will be inadmissible unless plaintiff can establish that they fall under one of the hearsay exceptions set forth in Rule 803.

Next, the Court will limit the time frame of plaintiff's testimony, outside of work history and performance, to the years 2005 through the present. Events occurring before 2005 are not relevant, not only because plaintiff has said that the discrimination began in 2005, but also because plaintiff had a different supervisor before 2000 and has not alleged wrongdoing by Atkinson between 2000 and 2005. *Cf. Callanan v. Runyun*, 75 F.3d 1293, 1298 (8th Cir. 1996) ("[W]e do not feel that the district court abused its discretion when it excluded [plaintiff's] proffered evidence of other alleged acts of discrimination. To begin with, the excluded testimony in this case . . . consisted largely of generalized, subjective assertions of a perceived bias in operations at [defendant's] facility. Moreover, to the extent that the testimony did identify discrete acts of discrimination, the witnesses did not complain that [plaintiff's] own supervisors had engaged in any behavior that we could correctly characterize as improper."). As for events occurring after plaintiff's formal separation from UB, *Morgan* is distinguishable because the issue there concerned events that occurred outside of the 300-day period for filing with the Equal Employment Opportunity Commission ("EEOC")

12

but while plaintiff was still employed.  Nonetheless, and subject to objections at trial to specific testimony, plaintiff may testify about specific acts of alleged retaliation that occurred after April 26, 2007, so long as she can connect them to the employment relationship that she had with UB.  *See, e.g., Abreu v. Suffolk County Police Dep't*, No. 03-CV-5927, 2007 WL 608331, at *12 (E.D.N.Y. Feb. 23, 2007) (citing cases holding that retaliatory "blacklisting" of a former employee can support a cause of action for retaliation).

Any objections to specific testimony from plaintiff are reserved for trial.

2.      *Jennifer Machucki*

Plaintiff has proposed calling Jennifer Machucki ("Machucki") as a trial witness.  Machucki was a graduate student who attended UB from 1996 to 2002. As a student with a disability, Machucki would testify "about ongoing access issues she experienced" on campus.  (Dkt. No. 106 at 2.)  Machucki also was one of three students with disabilities who filed a lawsuit against UB in 2000 for not providing a sufficiently accessible campus.  Plaintiff proposes that she "and Ms. Machucki share common interests advocating for the rights for people with disabilities, especially at the State University of New York at Buffalo."  (*Id.*)  UB objects to Machucki's testimony in its entirety as irrelevant.  UB asserts that any of Machucki's experiences occurred years before the alleged discrimination against plaintiff began.  Additionally, UB asserts that Machucki never filed any complaints of discrimination during her time on campus.

13

The Court agrees with UB that there is a significant problem with the proposed testimony from Machucki.  Machucki was not on campus when plaintiff allegedly experienced her discrimination and never complained of discrimination against herself, let alone against plaintiff.  Machucki simply has no personal knowledge of what plaintiff might have experienced in her work environment.  *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")  Additionally, plaintiff's summary of Machucki's proposed testimony indicates that all of the proposed testimony would concern a struggle to make UB's campus more disability-accessible.  Whether UB's campus is in fact inaccessible is not at issue in this case; what is at issue is whether UB unlawfully discriminated against plaintiff—and not Machucki—for saying so.  Since the summary of proposed testimony says nothing at all about UB's reactions to plaintiff's advocacy, the Court sustains UB's objection and precludes Machucki entirely as a trial witness.

> 3.    *Dan Chappell*

Plaintiff has proposed calling Dan Chappell ("Chappell") as a trial witness.  Chappell graduated from UB in 2007 and was a federal work-study student in the Great Lakes Program in 2004 and 2005.  According to plaintiff, "Mr. Chappell is a witness to demeaning, negative and disparaging treatment by Alan Rabideau and others while he worked in the Great Lakes Program office . . . ."  (Dkt. No. 106 at

14

2.)  Further, "Mr. Chappell is willing to share important observations about Alan Rabideau from a former student's perspective and his serious concerns about the Administration's turning a *blind eye* to the way Alan Rabideau was treating Plaintiff."  (*Id.*)  UB objects to any testimony from Chappell "only to the extent that he would testify concerning any inadmissible hearsay or events outside the relevant time period."  (Dkt. No. 99 at 2.)

UB's objection is sustained.  Chappell may testify at trial, but only as to allegedly discriminatory conduct against plaintiff that occurred in 2005 or later and that he personally witnessed or otherwise knows personally.  Any objections to specific testimony from Chappell are reserved for trial.

4.    *Paul Zarembka*

Plaintiff has proposed calling Dr. Paul Zarembka ("Zarembka") as a trial witness.  According to plaintiff, Zarembka is an economics professor at UB who was a regular member of the faculty union, the United University Professions ("UUP"), from 2005 to 2007.  Plaintiff claims that she communicated with Zarembka publicly through an e-mail distribution list and privately about the alleged discrimination that she was experiencing.  UB objects to Zarembka's testimony in its entirety on relevance and hearsay grounds.  UB asserts that Zarembka has no personal knowledge of the alleged discrimination against plaintiff and can only relay hearsay statements from his prior communications with plaintiff.  UB asserts further that Zarembka was not even the UUP

15

representative involved in the events alleged in this action, and that the correct representative, Patricia Donovan, will be available at trial.

UB's objection is sustained.  By plaintiff's own description, Zarembka appears to be someone whom plaintiff sought as a sounding board for events that she has alleged.  Nothing in plaintiff's description of Zarembka's prospective testimony indicates that Zarembka ever worked with plaintiff or has any personal knowledge of any events that plaintiff has alleged.  Accordingly, Zarembka is precluded from testifying at trial.

     5.    *John Sheffer II*

Plaintiff has proposed calling John Sheffer II ("Sheffer") as a trial witness. According to plaintiff, Sheffer is a former New York State Senator and Assemblyman who was instrumental in attaining funding for the Great Lakes Program in the early 1980s.  Scheffer also has been a personal friend of plaintiff since 1989.  Plaintiff proposes that Sheffer testify about issues that she shared with him regarding alleged discrimination by UB.  Plaintiff proposes further that Sheffer testify about unspecified general harassment involving her, UB, and UUP. UB objects to Sheffer's testimony in its entirety on relevance and hearsay grounds.  UB asserts that Sheffer has no involvement with any alleged facts in this case except that he helped create the Great Lakes Program approximately 20 years before the discrimination allegedly occurred.  UB asserts further that Sheffer could testify only about hearsay statements that he made privately to

plaintiff in response to hearsay statements that she made to him about the discrimination that she perceived.

UB's objection is sustained.  Scheffer never worked with plaintiff or in any capacity at UB at all.  Based on plaintiff's description of proposed testimony, Sheffer has no personal knowledge whatsoever of any fact that would help resolve plaintiff's claims.  Accordingly, Sheffer is precluded from testifying at trial.

      6.   *Flora Khinkis*

Plaintiff has proposed calling Flora Khinkis ("Khinkis") as a trial witness. According to plaintiff, Khinkis was the mother of a student with a disability who attended UB.  Khinkis would testify that she contacted plaintiff regarding the support and services that her son needed from UB.  Khinkis would testify further about plaintiff's role in advocating for her son's rights.  UB objects to Khinkis's testimony in its entirety on relevance and hearsay grounds.  UB asserts that Khinkis's son did not attend UB during the times that are relevant to this case. UB asserts further that plaintiff has not specified what specific events would be included in Khinkis's testimony.

UB's objection is sustained.  Based on plaintiff's description of proposed testimony, Khinkis would testify about how plaintiff tried—apparently unsuccessfully—to persuade UB to make certain accommodations for Khinkis's son.  To the extent that plaintiff will need to tell the jury what activities composed her advocacy for the disabled, she may do so herself to the extent permitted by

the hearsay rule.  In that sense, testimony from Khinkis would be cumulative.

Additionally, and as the Court noted above, this case is not about whether UB

failed to make accommodations for disabled students; it is about whether UB

unlawfully discriminated against plaintiff for saying so.  Based on plaintiff's

description of proposed testimony, Khinkis has no personal knowledge of any

alleged discrimination that plaintiff experienced.  Accordingly, Khinkis is

precluded from testifying at trial.

> **D.**   ***Plaintiff's Exhibits***

Plaintiff has proposed entering 240 exhibits into evidence to substantiate

her claims.  These exhibits fall into the following general categories:

1.   The docket sheet for this case;

2.   Correspondence to and from third parties regarding what plaintiff told those third parties about stress that she experienced at work and discrimination that she perceived;

3.   Correspondence to the EEOC regarding the status of her complaint and complaining that the EEOC was not investigating her complaint quickly enough;

4.   Information pages from the EEOC website regarding the EEOC's mediation program;

5.   Lists of court cases naming UB as a defendant that plaintiff sent to a local newspaper;

18

6.   Personal thank you letters to plaintiff from various personnel at UB and other universities thanking plaintiff for arranging conferences and editing newsletters;

7.   Unsigned and unauthenticated memoranda that look like meeting agendas for the Great Lakes Program;

8.   Correspondence between plaintiff and various UB employees regarding plaintiff's request for information on UB's progress in making accommodations for disabled students since a lawsuit was settled in 2000; and

9.   An e-mail request sent to UUP members requesting donations of vacation time to help her address health problems.

Many of these exhibits capture plaintiff expressing frustration to various third parties about the discrimination that she perceived coming from UB.  These exhibits do not move plaintiff any closer to establishing any alleged conduct by UB; at most, they would needlessly repeat plaintiff's trial testimony about UB's conduct.  These exhibits are irrelevant to plaintiff's claims.  Other exhibits—many of which overlap with the irrelevant exhibits—contain extensive and nested hearsay about UB's propensity to discriminate.  UB objects to a majority of plaintiff's proposed exhibits on relevance and hearsay grounds.  UB objects further that any exhibits entered into evidence be properly authenticated and free of plaintiff's annotations or any other alterations.

19

Upon review of the proposed exhibits, UB's objections, and plaintiff's arguments for admission, the Court sustains UB's objections to the following exhibits from plaintiff, which will inadmissible at trial: 1, 2, 3(1),[2] 9, 10, 13, 14, 16–19, 22–25, 30–42, 46, 49, 51, 53, 55, 57, 58, 61, 62, 64–66, 68, 69, 72–83, 86–92, 94–96, 99–119, 125–128,[3] 131, 134–136, 139–144, 146–153, 156–158, 160–163, 171–176, 178–182, 184–186, 188, 189, 196, 197, 215, 216, 223, 230, 232, 233, 236, 237, 239, and 240.

The following exhibits will be admissible for background purposes only, subject to appropriate foundation and production of a clean copy free of handwriting that can be submitted to the jury: 3(2), 4–8, 20, 21, 26–29, 47, 52, 54, 56, 97, 121, 154, 155, 159, 192–195, 227, and 238.

Subject to appropriate foundation and production of a clean copy free of handwriting that can be submitted to the jury, the following exhibits will be admissible at trial either because UB has not objected or because the Court overrules UB's objections: 11, 12, 15, 43, 44, 45, 48, 50, 59, 60, 63, 67, 70, 71, 84, 85, 93, 98, 120, 122, 123, 124, 130, 132, 133, 137, 138, 145, 164–170, 177, 183, 187, 190, 191, 198–214, 218, 222, and 234.

Subject to appropriate foundation and production of a clean copy free of handwriting that can be submitted to the jury, the following exhibits will be

---

[2] Plaintiff has submitted two exhibits numbered 3.

[3] Plaintiff has not submitted any exhibit numbered 129.

admissible at trial if and only if plaintiff obtains either the originals or copies certified by the appropriate medical or governmental records custodian, so as to make them admissible under Rule 803(6): 217, 219–221, 224–226, 228, 229, 231, and 235.

E.    *UB's Witnesses*

Plaintiff has filed objections to several of the witnesses that UB has proposed calling at trial.

Among other witnesses, UB proposes calling Atkinson, the current Director of the Great Lakes Program.  Plaintiff's objection to Atkinson's testimony is that the "[f]ailure to re-appoint plaintiff was not based on funding but an adverse action against plaintiff for reporting discrimination against his colleague and friend, Alan Rabideau."  (Dkt. No. 102 at 2.)  Plaintiff's objection is not an objection to admissibility based on the Federal Rules of Evidence, but rather one of the core contentions in her entire case.  Plaintiff certainly will be able to cross-examine Atkinson in pursuit of her contention; what weight her contention should receive is a matter for the jury to resolve.  Plaintiff's objection is overruled.

Plaintiff has objected to any testimony coming from Ann Salter ("Salter"), a retired senior staff assistant who once worked for Rabideau.  Plaintiff's objection is that Salter "had no role in plaintiff's harassment, discrimination or retaliation claims."  (*Id.* at 3.)  Plaintiff, however, has put in controversy how a work environment functions with her or Rabideau in it.  Consequently, Salter's

testimony will be relevant to the extent that she has personal knowledge of a work environment featuring plaintiff, Rabideau, or both of them.  Plaintiff's objection thus is overruled.

Plaintiff has objected to any proposed testimony from Helen Domske ("Domske"), the Associate Director of the Great Lakes Program.  Plaintiff objects that any testimony from Domske would be irrelevant because she was not on the UB payroll and was not in a position to make decisions about plaintiff's employment.  UB responds that Domske was in fact the Associate Director of the Great Lakes Program, thus putting her in a supervisory role and in a key position to discuss plaintiff's work environment, regardless of her payroll setup.  The Court agrees that the second-highest officer in the Great Lakes Program may have a lot of relevant information about the work environment in that office, regardless of the details of her payroll.  Accordingly, plaintiff's objection is overruled.

Plaintiff has objected to proposed testimony from Sharon Nolan-Weiss ("Nolan-Weiss"), UB's Associate Director of the Office of Equity, Diversity and Affirmative Action Administration ("EDAAA").  Plaintiff seeks to preclude any testimony from Nolan-Weiss on the grounds that Nolan-Weiss is a lawyer and that any information that plaintiff shared with her is confidential.  In support of her argument, plaintiff cites (former) New York attorney disciplinary rules and American Bar Association model rules that limit how attorneys may communicate, in the course of representing a client, with people whom they know to be

22

represented by counsel for the same subject matter.  UB responds that the rules that plaintiff has cited do not apply to this situation, and that in any event, plaintiff has placed her relationship with Nolan-Weiss at issue by asserting that she presented her situation to Nolan-Weiss.  The Court agrees that the rules that plaintiff has cited do not apply here, and that a key part of plaintiff's entire case is how she interacted with the various administrators at UB who handle complaints of employment discrimination.  Accordingly, plaintiff's objection is overruled.

Plaintiff has objected to proposed testimony from Beth Del Genio ("Del Genio"), Chief of Staff at UB's Office of the Provost.  Plaintiff apparently wants Del Genio precluded entirely, because she contends that Del Genio was not involved in the decision not to renew her contract.  As with her objection to Atkinson's testimony, plaintiff objects further that the failure to re-appoint her was not based on funding but on discriminatory conduct.  Since part of the core of plaintiff's case is her categorical denial that funding had anything to do with her non-renewal, any personal knowledge that Del Genio has about the Provost's evaluation of funding for the Great Lakes Program would be relevant. Accordingly, plaintiff's objection is overruled.

Plaintiff has objected to proposed testimony from James Jarvis ("Jarvis"), UB Associate Vice President for Human Resources.  UB submits that Jarvis may testify about the terms and conditions of plaintiff's employment and about issues related to plaintiff's non-renewal and search for other jobs on campus.  Plaintiff

objects that Jarvis is not relevant as a witness because she applied for numerous jobs at UB and was blacklisted.  Again, plaintiff's objection actually is one of the theories of her case, not a problem of admissibility under the Federal Rules of Evidence.  Accordingly, plaintiff's objection is overruled.

Finally, plaintiff has objected to any trial testimony coming from Patricia Donovan ("Donovan").  Donovan is the UUP representative at UB with whom plaintiff communicated regarding Rabideau and her work environment.  Plaintiff objects to testimony from Donovan on the grounds that Donovan "represented" her and thus is prohibited from disclosing any aspects of her case.  UB responds that plaintiff never filed a formal UUP grievance, that Donovan never represented her in any capacity as a result, and that plaintiff has put her relationship with Donovan at issue in any event.  To the extent that plaintiff intends to criticize UUP at trial for not investigating her situation and advocating for her, she cannot simultaneously prevent UUP representatives from explaining how it responded to plaintiff's situation.  Accordingly, plaintiff's objection is overruled.

### F.   *UB's Exhibits*

UB has proposed entering 36 exhibits into evidence to substantiate its claims.  The exhibits generally consist of correspondence between the EEOC and either UB or plaintiff; correspondence between UB and plaintiff concerning renewal or non-renewal of her funding over time; information regarding the job postings and search processes for other jobs on campus that plaintiff sought; and

information about prior proceedings in this case or other cases in which UB was a defendant.

Plaintiff objects to many, though not all, of UB's exhibits.  The rationale behind plaintiff's objections is difficult to understand, since plaintiff has made her objections in one or two words (*e.g.*, "irrelevant" or "hearsay") and with no explanation.  UB has responded to each objection, setting forth the rationale for admitting the exhibit in question.

Upon review of all of UB's proposed exhibits, and after consideration of the strongest possible arguments that could support a *pro se* plaintiff's evidentiary objections[4] and UB's arguments in favor of admissibility, the Court sustains plaintiff's objections to defense exhibits 8, 10, and 36.

The Court partially sustains plaintiff's objections to defense exhibits 4, 5, and 6.  Those exhibits are admissible only to demonstrate that UB corresponded with the EEOC on May 3, 2006 and with plaintiff on April 10, 2006.

The Court partially sustains plaintiff's objections to defense exhibits 31 and 33.  Those exhibits will be admissible for impeachment only, not for UB's case in chief.

Finally, plaintiff had filed objections (Dkt. No. 98) to the disclosure of Social Security numbers, bank account numbers, and similarly sensitive personal

---

[4] "Because [plaintiff] is a *pro se* litigant, we read [the] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted).

information in some of UB's exhibits.  Although only exhibit lists, and not exhibits

themselves, are docketed publicly, plaintiff's concerns about privacy are

reasonable.  Further, there is no reason to publish sensitive personal information

to the jury.  Accordingly, UB is directed to redact such information from any

exhibits published to the jury.

The Court overrules any other objections that plaintiff had to any other

exhibits.  All other defense exhibits not listed above are admissible.

## III.    CONCLUSION

For all of the foregoing reasons, the Court will admit witnesses and exhibits

at trial as explained above.  As the Court set forth in its prior Decision and Order

of January 5, 2011 (Dkt. No. 109), jury selection will begin on Tuesday, June 14,

2011 at 9:00 a.m.  Trial will commence on Wednesday, June 15, 2011 at 9:30

a.m.

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: April 19, 2011